# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RONDA HOBLIT, | : | Case No. 3:16-cv-420 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.      Introduction

Plaintiff Ronda Hoblit brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on March 1, 2011, asserting that she could no longer work a substantial paid job. In early 2012, Administrative Law Judge (ALJ) Amelia G. Lombardo concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.

Upon its review, the Social Security Administration's Appeals Council remanded ALJ Lombardo's decision. In August 2013, ALJ Lombardo issued a second decision, again concluding that Plaintiff was not under a disability. This time around the Appeals

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Council denied Plaintiff's request for review. Consequently, Plaintiff sought review in this Court. *See Hoblit v. Commissioner of Social Security*, 3:14-cv-461, (S.D. Ohio October 21, 2015) (Rice, D.J.). Upon the parties' joint stipulation, this Court remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.*

Meanwhile, in January 2015, Plaintiff filed a new application for Supplemental Security Income. The Social Security Administration granted her new application, finding her eligible for benefits. (Doc. #7, *PageID* #s 2140, 2313-30). By then she had turned age 50 and met the all the eligibility requirements, including, in part, her status as a "person closely approaching advanced age." *See* 20 C.F.R. § 416.963(d).

This leaves Plaintiff's March 1, 2011 application—the one this Court remanded— in the midst of its administrative proceedings pending before the Appeals Council. The Appeals Counsel identified many flaws in ALJ Lombardo's August 2013 decision and consequently remanded the matter for further proceedings before an ALJ. The case was thereafter assigned to ALJ Benjamin Chaykin who held a hearing and later issued a decision finding that Plaintiff was not under a disability before her established disability onset date of October 18, 2014. (Doc. #7, *PageID* #1973). Plaintiff brings the present case challenging ALJ Chaykin's decision that she was not under a disability starting on the date of her application continuing through the date ALJ Chaykin found her disabled. Consequently, the non-disability period remaining at issue is March 1, 2011 until October 17, 2014 (after which she was under a disability and entitled to benefits, as the Administration found).

Plaintiff presently contends that the ALJ erred by rejecting every treating medical-source opinion, by impermissibly acting as a medical expert, and by misinterpreting the medical record and the nature of fibromyalgia. She asserts, moreover, that she was essentially per se disabled during the time period in question based on her hospitalizations and treatment alone.

The Commissioner maintains that the ALJ complied with the Appeals Council's remand order and properly evaluated Plaintiff's fibromyalgia and the medical opinions of record.

## II.     Additional Background

Plaintiff asserts that she has been under a "disability" since January 14, 2011. She was forty-six years old at that time, and was therefore considered a "younger person" under Social Security Regulations during the time period presently at issue. *See* 20 C.F.R. § 416.963(c). She has a limited education. *See* 20 C.F.R. § 416.964(b)(3). She worked many years ago as a nurse assistant and automobile salesperson but has no past relevant work experience. *See* Doc. #7, *PageID* #1971.

### A.     Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Chaykin that she is not able to return to work because she cannot sit or stand for long periods of time. *Id.* at 2052, 2061. She explained, "I'm lucky if I can stand for two minutes." *Id.* at 2052. She also indicated that she can stand comfortably for about five minutes. *Id.* at 2060. When she does stand, it bothers her knees. *Id.* Sitting comfortably lasts two minutes for her. *Id.* at 2059. She has a lot of pain in her hips and legs. *Id*. In testimony the ALJ later declined to credit,

Plaintiff stated that she had used a wheelchair for about five years. *Id.* at 2053; *see PageID* #1965.

Plaintiff testified that she does not walk very often because when she does, she falls. *Id.* at 2059. She uses a walker inside her house because it is hard to get around in the wheelchair. *Id.* at 2053. In addition, Plaintiff's right shoulder hurts all the time. *Id.* at 1054. She had surgery to repair a broken clavicle bone, but it did not improve her pain. *Id.*

Plaintiff has pain from fibromyalgia every day. *Id.* at 2062. "[I]t flares every day. I never have relief from it. And it's something that's going to live with me the rest of my life." *Id.* at 2063. For treatment of her fibromyalgia, Plaintiff sees Dr. Linn three times a month. *Id.* at 2062-63. Plaintiff testified that she takes a lot of pain medication but "it doesn't do anything." *Id.* at 2061. She does not have any side effects. *Id.*

Plaintiff also struggles with mental-health issues. *Id.* at 2056. In January 2011, she was hospitalized after attempting suicide by taking a lot of pills. *Id.* In August 2012, she got mad at her children and husband: "I just flared off and I took some of my medicine, Vicodin, and I just tried to kill myself. I didn't want to be around no more." *Id.* at 2057. Plaintiff presented to Good Samaritan Hospital in June 2014, after she punched a wall and injured her hand. *Id.* at 2058.

In 2011, 2012, and 2013, Plaintiff had violent outbursts—"at least five times a day." *Id.* at 2058. During these outbursts, she threw things and "would go after a person and then stop because … if [she] did it[,] they were going to turn [her] into the police and

[she] didn't want to go to jail…." *Id.* at 2059. The people she went after were her daughters. *Id.*

Plaintiff received mental-health treatment with Dr. Gentile in the CAM program.[2] *Id.* at 2056. However, Dr. Gentile left and at the time of the hearing, she saw Dr. Budding. *Id.* at 2056, 2063. She saw Dr. Budding twice a month and attended counseling at CAM three times a month. *Id.* at 2064. Plaintiff takes medication for her mental-health symptoms, but it does not help and she still has flare ups. *Id.* at 2065

In addition, Plaintiff said that she is unable to work because she does not "comprehend things. If they were to give [her] a thing to do and [said] a lot of tasks that [she] would have to do, [she] can't remember them." *Id.* at 2061.

Plaintiff lives with her parents and her daughter. *Id.* at 2050. She has another daughter who lives with her husband. *Id.* Plaintiff's parents are in good health and take care of her. *Id.* at 2052. Plaintiff does not have a driver's license and has not one for at least ten years. *Id.* at 2051. She went to tenth grade in school and has not obtained a GED. *Id.* at 2052. She has not worked in ten to twelve years. *Id.*

**B.    Medical Opinions**

**Vadak Ranganathan, M.D.**

On November 23, 2011, Plaintiff's neurologist, Dr. Ranganathan completed a medical assessment of her ability to do work-related activities. *Id.* at 1209-13. He opined that Plaintiff could not lift and/or carry any weight because of her low-back pain

---

[2] CAM refers to the Consumer Advocacy Model, a mental-health program at the Samaritan Behavioral Health. *See* Doc. #6, *PageID* #s 1186-97, 1962.

and fibromyalgia.  *Id.* at 1209-10.  For the same reason, she was not able to stand, walk, or sit for any period of time in an eight-hour workday.  *Id.* at 1210.  She could never climb, balance, stoop, crouch, kneel, or crawl, and her ability to reach, handle, finger, feel, and push/pull were affected by her impairments.  *Id.* at 1211.  Her ability to work around heights, moving machinery, chemicals, temperature extremes, vibration, dust, noise, fumes, and humidity.  *Id.* at 1212.  Dr. Ranganathan concluded Plaintiff did not have the residual functional ability to do sedentary work on a sustained basis.  *Id.* at 1213.

### Robert Linn, D.O.

Dr. Linn, Plaintiff's treating physician, completed two basic medical forms in March 2011.  *Id.* at 1378-81.  Dr. Linn opined Plaintiff's health status was poor but stable.  *Id.* at 1378, 1380.  He listed Plaintiff's medical conditions as bipolar disorder, hypothyroidism, fibromyalgia, acid reflux, restless leg syndrome, migraines, and gastrointestinal malfunction.[3]  *Id.* at 1378.  Dr. Linn opined Plaintiff could walk and/or stand for fifteen minutes at a time for a total of one to two hours.  *Id.* at 1279, 1281.  She can sit for ten minutes at a time for a total of six to seven hours.  *Id.*  Her ability to push/pull and bend are extremely limited; her ability to reach, handle, and move her feet repetitively are markedly limited; and her ability to see and speak are moderately limited.  *Id.*  These limitations are expected to last between nine and twelve months.  *Id.*  Dr. Linn concluded Plaintiff is unemployable.  *Id.*

---

[3] Dr. Linn's writing here is nearly illegible except for his legible indication of the applicable diagnostic code "306.4" or gastrointestinal malfunction. *Id.* at 1378; *see* http:///www.ICD9Data.com  (search: "306.4").

**Julie Gentile, M.D.**

Plaintiff's treating psychiatrist, Dr. Gentile, completed a medical functional capacity assessment on March 24, 2011 for Ohio Job & Family Services. *Id.* at 1254-55. She opined that Plaintiff was markedly limited in many areas, including, for example, her abilities to understand, remember, and carry out detailed instructions; to sustain an ordinary routine without special supervision; to interact appropriately with the general public; and, to be aware of normal hazards and take appropriate precautions. *Id.* at 1254. She indicated these limitations are expected to last over twelve months. *Id.* Dr. Gentile concluded Plaintiff is unemployable. *Id.*

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Chaykin to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential

steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since January 14, 2011.

Step 2: She has the severe impairments of obesity; sleep apnea; polyarthralgias of uncertain cause with functional component (fibromyalgia syndrome); osteoarthritis of the bilateral hips; lumbar degenerative disc disease; cubital tunnel syndrome; bilateral carpal tunnel syndrome; residuals of right shoulder surgery; seizure disorder; polysubstance abuse; affective disorder/dysthymia; and cognitive impairment.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Since January 14, 2011, her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a reduced range of sedentary work. She "lacks the residual functional capacity to (1) lift or carry more than 10 pounds or 5 pounds frequently; (2) stand for more than 30 minutes at one time and walk for more than 15 minutes at one time for a combined total of no more than 2 hours in an 8-hour workday; (3) occasionally crawl, crouch, stoop, kneel, or climb stairs; (4) frequently handle and finger bilaterally; (5) occasionally perform overhead reaching with the dominant (right) upper extremity; (6) occasionally push and pull with the dominant (right) upper extremity; (7) work at unprotected heights, around moving machinery, or climb ladders, ropes, or scaffolds; (8) perform commercial driving; (9) work at temperature extremes or in wet or humid areas; (10) have any contact with the public in a work setting or have greater than occasional contact with supervisors or co-workers; (11) follow complex instructions; and (12) do other than low stress work activity (i.e., no job involving fixed production quotas, rapid production pressure, or otherwise involving above average pressure for production; work that is other than routine in nature or work that is hazardous; and limited to a static work environment, with few changes in the work setting)." (Doc. #7 , *PageID* #s 1956-57).

Step 5:     Before October 18, 2014, she could perform a significant number of jobs that exist in the national economy.  Beginning on October 18, 2014, there are no jobs that exist in significant numbers in the national economy that she could perform.

(Doc. #7, *PageID* #s 1947-74).  These main findings led the ALJ to ultimately conclude, as noted above, that Plaintiff was under a disability starting, and continuing after, October 18, 2014, but not before.  *Id.* at 1973.

## V.     Discussion

### A.     The Parties' Contentions

Plaintiff contends that the ALJ erred by rejecting the opinions provided by physicians Drs. Ranganathan and Linn and by not adequately evaluating the medical evidence of record.  "In fact," she says, "the language used by ALJ Chaykin in rejecting every treating source opinion [including Dr. Gentile] is similar (and in some cases, nearly identical) to that used by ALJ Lombardo in the previous decision, which was remanded as insufficient."  (Doc. #8, *PageID* #5063).   She also points out that these physicians, Drs. Ranganathan and Linn, documented symptoms consistent with those recorded by rheumatologist Dr. Schriber, and that those symptoms were consistent with fibromyalgia.  And, Plaintiff asserts that the ALJ impermissibly acted as his own medical expert and erred by basing his decision on a fundamental misunderstanding of fibromyalgia.

The Commissioner maintains that ALJ Chaykin complied with the Appeals Council Order by identifying more reasons than ALJ Lombardo previously provided for discounting the opinions of Drs. Ranganathan and Linn.  The Commissioner further maintains that the ALJ understood fibromyalgia and properly referred to the lack of

objective medical evidence as a reason to reject Dr. Ranganathan's opinion that Plaintiff had low back pain. Additionally, the Commissioner asserts that ALJ Chaykin properly evaluated the opinions provided by Drs. Ranganathan, Linn, and Gentile, that substantial evidence supports not only the ALJ's finding that Plaintiff was not fully credible but also the ALJ's finding that Plaintiff has no limitations other than needing to avoid even moderate exposure to chemical fumes or hazards.

## A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). And,

the Regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544.

ALJ Chaykin declined to place controlling or deferential weight on Dr. Ranganathan's opinions. He opted instead to place "little weight" on this neurologist's opinions. (Doc. #7, *PageID* #1968). Doing so, however, some of ALJ Chaykin's reasons harken back to ALJ Lombardo's August 2016 decision. This is problematic because the Appeals Council previously determined that ALJ Lombardo's decision— which (like ALJ Chaykin's decision) placed "little weight" on Dr. Ranganathan's opinions —"did not give sufficient reasons for discounting the opinion of the claimant's treating neurologist, [Dr.] Ranganathan." *Id*. at 2080. The Appeals Council reported:

> [ALJ Lombardo's] decision reasoned that Dr. Ranganathan based his opinion primarily on the claimant's subjective complaints as her objective findings in the record were relatively normal and Dr. Ranganathan's own treatment notes show "no more than multiple tender spots, and only on a few occasions." While only a few of Dr. Ranganathan's treatment notes explicitly state that claimant had greater than 12 tender points consistent with fibromyalgia, all of his treatment notes throughout the record indicate that the claimant had fibromyalgia. Records of Robert Linn, D.O., the claimant's treating physician, also consistently noted that the claimant had fibromyalgia and multiple tender points. In addition, though the decision recognized that the claimant had the severe impairment of fibromyalgia, it relied heavily on the fact that the claimant had normal or nearly normal objective findings to determine that Dr. Ranganathan's opinion was based only on the claimant's objective complaints and could not be attributable to limitations caused by her fibromyalgia. However, fibromyalgia does not manifest itself through objective tests the other physical impairments do (Social Security Ruling 12-2p). Therefore, dismissal of Dr. Ranganathan's opinion because physical examinations were "relatively normal" and because Dr. Ranganathan's progress notes show "no more than multiple tender spots" does not provide sufficient reasons for discounting the treating source opinion.

*Id.* (most internal citations omitted). Although the Appeals Council's remand decision was available to ALJ Chaykin, he forged ahead with some of the same insufficient reasons ALJ Lombardo had used. ALJ Chaykin observed, "Dr. Ranganathan's progress notes primarily document the claimant's diagnoses and subjective complaints. Only a few of these notes show greater than 12 tender points consistent with fibromyalgia, and other notes show only 'multiple' tender spots." *Id.* at 1968 (citation omitted). To the extent that ALJ Chaykin relied on the lack of objective evidence to minimize the weight he placed on Dr. Ranganathan's opinions, this was error. The ALJ erred in the same manner by discounting Dr. Linn's opinions because his progress notes, in the ALJ's view, "show only multiple tender points along the spine, shoulders, hips, and knees, as well as some bony tenderness in the bilateral legs." (Doc. #7, *PageID* 1967). "[F]ibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (footnote omitted) (citing, in part, *Preston v. Sec'y of HHS*, 854 F.2d 815, 820 (6th Cir. 1988)); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (the ALJ mistakenly "depreciated the gravity of Sarchet's fibromyalgia because of the lack of any evidence of objectively discernible symptoms, such as a swelling of the joints."); *Starcher v. Comm'r of Soc. Sec.*, No. 2:15cv3113, 2016 WL 5929048, at *5 (S.D. Ohio, 2016) (Kemp, M.J.) report and recommendation adopted, 2016 WL 6493427 (Nov. 2, 2016) (Graham, D.J.). The Appeals Council correctly and conspicuously recognized this. (Doc. #7, *PageID* #2080) ("fibromyalgia does not manifest itself

through objective tests the other physical impairments do (Social Security Ruling 12-2p).").

The Commissioner counters that the ALJ was relying on the lack of objective supporting evidence to deprecate Dr. Ranganathan's reference to Plaintiff's "low back pain," not to belittle this physician's opinions about Plaintiff's fibromyalgia. The ALJ's thinking does not follow a reasonable line. Dr. Ranganathan did not specify that Plaintiff suffered serious or severe low back pain; if he had, the mild to moderate findings might have provided a reasonable basis for discounting Dr. Ranganathan's opinion as unsupported by spinal imaging. However, it was an unreasonable leap for the ALJ (and the Commissioner) to think that the mild to moderate findings provided a valid reason for finding either that Plaintiff was not having low back pain or that Dr. Ranganathan's low-back-pain notation deserved little or no weight. And, the Commissioner overlooks that the lack of objective evidence supporting the existence of Plaintiff's low back pain is consistent with the repeated diagnoses of fibromyalgia by Drs. Ranganathan and Linn. *Rogers*, 486 F.3d at 243 ("fibromyalgia patients present no <u>objectively</u> alarming signs." (emphasis added).

ALJ Chaykin also found that "many other physical exams throughout the record do not support the severe limitations suggested by Dr. Ranganathan." (Doc. #7, *PageID* #1968). This, however, is contrary to the record and the Appeals Council's recognition that Dr. Linn consistently noted that Plaintiff had fibromyalgia and multiple tender points. It was error for the ALJ to overlook or ignore such evidence, especially when the Appeals Council explained its status as evidence tending to support Dr. Ranganathan's

opinions. "[A] substantiality of evidence evaluation does not permit a selective reading of the record…. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted)).

The Commissioner further argues that the ALJ correctly placed little weight on Dr. Ranganathan's opinions because the ALJ found that the limitations Dr. Ranganathan suggested were "significantly out of proportion to the preponderance of the medical findings." (Doc. #12, *PageID* #5091(citing *PageID* #1968)). But, reading this reason in context shows that is built on an insubstantial foundation. The sentence after the ALJ's "significantly out of proportion" statement reveals that he was viewing Dr. Ranganathan's opinion as out of proportion…" with progress notes show diagnoses, subjective complaint, and multiple tender spots. *Id.* at 1968. Yet, the Appeals Council correctly recognized that "a few of Dr. Ranganathan's treatment notes explicitly that the claimant had greater than 12 tender points consistent with fibromyalgia …." *Id.* at 2080. And, the multiple tender spots documented by Drs. Ranganathan and Linn cannot be reasonably said as insufficient to support these physician's opinions about Plaintiff's fibromyalgia and work limitations. As the Appeals Council explained, "dismissal of Dr. Ranganathan's opinion because his " progress notes show 'no more than multiple tender spots' does not provide sufficient reasons for discounting the treating source opinion."

*Id.* The ALJ, moreover, minimized the importance of multiple tender points when discussing the opinions of both Drs. Linn and Ranganathan based on his own lay medical opinion and myopic view of the record. This was error. The ALJ did not rely on medical evidence such as a medical source's opinion suggesting that the Plaintiff's medical records showing multiple tender points was not medically insignificant or did not support the opinions of Drs. Linn and Ranganathan. The ALJ simply and incorrectly relied on his own lay notions about the insignificance of multiple tender points. ALJs must resist the temptation to play doctor, particularly when the lack of objective evidence tends to corroborate a particular claimant's diagnosis of fibromyalgia and when physicians' efforts to medically treat fibromyalgia over a lengthy period of time have provided the claimant with little, if any, relief. "An ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Security*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir.2006) and citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); see *also Harvey v. Comm'r of Soc. Security*, No. 16-3266, 2017 WL 4216585, at *7 (6th Cir. 2017).

The ALJ also ignored or overlooked the consistency factor when weighing the opinions provided by Drs. Ranganathan and Linn. Dr. Linn documented on many occasions that Plaintiff had fibromyalgia with multiple tender spots in her hips, knees, shoulders, and spine. *E.g.*, *PageID*#s 826-27, 830-31, 833-34, 849, 859, 863, 869, 878,

890, 892, 899.  On March 31, 2011, Plaintiff had boney tenderness in her right and left

hips, tenderness in her right and left knees, and tenderness in all three areas of her spine,

cervical, thoracic, and lumbar.  *Id*. at 826.   Dr. Linn also noted that Plaintiff, at times,

had joint swelling, and arthralgias (especially in her knees) and he routinely documented

Plaintiff's dizziness, weakness, numbness in her fingertips, and burning sensation in her

feet.  Because an ALJ may not pick and choose only the evidence that supports his non-

disability finding, it was error for the ALJ not to consider the consistency between Dr.

Linn's treatment records and opinions and the information and opinions Dr. Ranganathan

provided.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all

the record evidence and cannot 'pick and choose' only the evidence that supports his

position."); *see also Minor v. Comm'r of Soc. Sec.*, 513 Fed Appx. 417, 435 (6th Cir.

2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than

doing a proper analysis).

The ALJ observed moreover that Dr. Linn's opinions indicated that Plaintiff's

disability would last for a continuous period of 9 to 11 months, rather than the 12 or more

months required to fit the definition of a "disability."  While this is definitionally

accurate, it is not a valid reason to wholly renounce the evidence and limitations Dr. Linn

found Plaintiff had during the 9-11 month period, including the fibromyalgia-supporting

findings Dr. Linn documented and the consistencies between Dr. Linn's treatment notes

and opinions, and Dr. Ranganathan's opinions.

There is another problem with ALJ  Chaykin's decision.  The ALJ criticized Dr.

Ranganathan for appearing to "quite heavily rely on the subjective reports of symptoms

and limitations provided by the claimant and seemed to uncritically accept as true, most if not all, or what the claimant reported...." (Doc. #6, *PageID* #1968). Other than referencing the unreliability of Plaintiff's subject reports of symptoms and limitations, *id.*, the ALJ did not identify any information in Dr. Ranganathan's treatment records that tends to show he was uncritically accepting as true Plaintiff's subject statements during treatment sessions. The record instead tends to show the opposite. Dr. Ranganathan, for instance, conducted multiple "neuro exam[s]" and his treatment records contain reports from medical imaging and neurological testing, evidence tending to show that Dr. Ranganathan was searching for the cause and status of Plaintiff's pain rather than simply accepting her subjective reports without inquiry. *Id.* at 1284, 1289, 1294-96, 1645-46, 1825-26; *see* Doc. #7, *PageID* #s 2446-59.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

## B.    Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case because the evidence of disability is strong while contrary evidence is lacking. Plaintiff's treatment records and the opinions provided by Drs. Linn and Ranganathan conclusively establish that Plaintiff's fibromyalgia and pain limited would limit her to a reduced range of sedentary work such that, according to the vocational expert, a significant number of jobs would not be available for her to perform. *See* Doc. #7, *PageID*#s 2073-74. Additionally, in light of the fact that Plaintiff filed for Supplemental Security Income nearly seven years ago, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter by requiring additional administrative proceedings. *See Karger v. Comm'r of Soc. Security,* 414 F. App'x 739, 755 (6th Cir. 2011) (discussing *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985) (other citation

omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted based on Plaintiff's application for Supplement Security Income until October 17, 2014.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be reversed and the case be REMANDED to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits based on Plaintiff's March 1, 2011 application for Supplemental Security Income until October 17, 2014; and

2. The case be terminated on the docket of this Court.

February 15, 2018                          *s/Sharon L. Ovington*
                                                            Sharon L. Ovington
                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).